## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Kimet Terolli, Individually and as** | : | |
| **Administrator of the Estate of Paola** | : | |
| **Terolli, deceased** | : | NO. |
| 1014 55th Street, Apartment 4A | : | |
| Brooklyn, NY 11219. | : | **JURY TRIAL DEMANDED** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **Penn State Health;** | : | |
| 100 Crystal A Drive | : | |
| Hershey, PA 17033 | : | |
| | : | |
| and | : | |
| | : | |
| **The Milton S. Hershey Medical Center;** | : | |
| 500 University Drive | : | |
| Hershey, PA 17033 | : | |
| | : | |

*(continued next page)*

| NOTICE | ADVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you. | Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE. | LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. ESTA OFICINA LO PUEDE PROPORCIONAR CON INFORMACION ACERCA DE EMPLEAR A UN ABOGADO. SI USTED NO PUEDE PROPORCIONAR PARA EMPLEAR UN ABOGADO, ESTA OFICINA PUEDE SER CAPAZ DE PROPORCIONARLO CON INFORMACION ACERCA DE LAS AGENCIAS QUE PUEDEN OFRECER LOS SERVICIOS LEGALES A PERSONAS ELEGIBLES EN UN HONORARIO REDUCIDO NINGUN HONORARIO. |

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

|  |  |
|---|---|
| and | : |
|  | : |
| **Brian D. Dodson, M.D.** | : |
| 209 Fox Chase Drive | : |
| Duncansville, PA 16635 | : |
|  | : |
| and | : |
|  | : |
| **Janet Cady, CRNP** | : |
| 3014 Fairchild Lane | : |
| State College, PA 16801, | : |
|  | : |
| Defendants. | : |

## CIVIL ACTION COMPLAINT
## MEDICAL PROFESSIONAL LIABILITY ACTION

Plaintiff, Kimet Terolli, Individually and as Administrator of the Estate of Paola Terolli, Deceased, by and through his undersigned attorneys, brings this medical malpractice action against Defendants named herein and demands damages of all Defendants in a sum in excess of the local arbitration limits, exclusive of interest, costs, and damages for pre-judgment delay, upon the causes of actions set forth below:

## INTRODUCTION

1.      This wrongful death and survival action arises out of the death of 25-year-old Paola Terolli, a graduate student at Penn State University who entrusted her medical care to the health care providers and medical institutions of Penn State Health while she attended school with aspirations of becoming a biomechanical engineer.

2.      As a result of the professional negligence of Defendants, as specified herein, Paola Terolli's colon cancer was not promptly diagnosed and treated, and was instead allowed to

progress over many months until her tragic death on July 19, 2023, less than a month after being diagnosed and just days after turning 25 years old.

3.      Ms. Terolli's father now brings this diversity action to hold Penn State Health and its medical providers responsible for the delayed diagnosis of her colon cancer, the premature death of a smart young woman who was deprived of fulfilling her goals and creating a new legacy for her family as part of their American dream.

## PARTIES AND JURISDICTIONAL FACTS

4.      Plaintiff, Kimet Terolli, is an adult individual who at all relevant times was domiciled in New York at his residential address of 1014 55th Street, Apartment 4A, Brooklyn, NY 11219.

5.      Plaintiff, Kimet Terolli, is Administrator of the Estate of Paola Terolli, deceased, having been so appointed by the Surrogate's Court of the State of New York, King County.  A copy of the Estate Administration paperwork designating Mr. Terolli as the Administrator of his late daughter's estate is attached hereto as **Exhibit A**.

6.      Plaintiff, Kimet Terolli, brings this action as the duly-appointed Administrator of his late daughter's Estate and on behalf of her beneficiaries at law under the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. §8301, the Pennsylvania Survival Act, 42 Pa. C.S.A. §8302, and the applicable Rules of Civil Procedure and decisional law.

7.      Plaintiff-decedent's statutory beneficiaries are: Kimet Terolli (surviving father) and Mimoza Cekani (surviving mother).

8.     Defendant, Penn State Health, is a domestic non-profit corporation organized and existing under the laws of the laws of the Commonwealth of Pennsylvania, with a principal place of business of 100 Crystal A Drive, Hershey, PA 17033. At all relevant times, Penn State Health was engaged in the provision of medical care, treatment, and healthcare services to the public, including members of the public in Pennsylvania such as Plaintiff-decedent, Paola Terolli, deceased, at and/or through hospitals and medical practices that it owned, managed, maintained, operated, and/or controlled, including in particular Hershey Medical Center, located at 500 University Drive, Hershey, PA 17033, the Penn State Health Division of Gastroenterology, the Penn State Health Gastrointestinal Colorectal Nursing Service, and the Penn State Health Endoscopy Center, located at 32 Colonnade Way, State College, PA 16803.  Moreover, Defendant Penn State Health employed physicians, graduate medical trainees (interns, residents, and fellows), nurses, certified registered nurse anesthetists, physician assistants, nurse practitioners, therapists, technicians, medical office assistants, administrators, specialist providers, and other medical staff including Brian D. Dodson M.D., Janet Cady CRNP, Kofi Clarke M.D., David Mellinger M.D., Guoli Chen M.D., Dawn M Sanzotti PA-C, Killi Jo Simco PA-C, Thu Thi Gazzio RN, Anne Bobb RN, Rayna Craig RN, Jenna Evans RN, Debra Lucas LPN, Erin Keen LPN, Shelly L. Snook LPN, Keira Park LPN, Lindsey Rattray, Jessica Stroud, Brittany Meyers, Alison Houser, Elizabeth Grenoble, Wendy McElwain, Morgan Ross, Gail A. Brown, Theresa L. Davis, Kayle Motes-West, Sarah Worthington, Emlily Clark, and other agents, servants, and employees who purportedly possessed skill and training for the purposes of providing medical care and services to the general public, and Paola Terolli, deceased, in particular. The claims asserted against Defendant Penn State Health are for the professional negligence of these actual, apparent and/or ostensible agents,

4

servants and employees who participated in the care of Ms. Terolli from August 2022 and thereafter, and whose acts and failures to act, described more particularly herein, increased the risk of harm and were substantial factors contributing to Ms. Terolli's catastrophic, debilitating, permanent and ultimately fatal cancer diagnosis leading directly to her death. As stated more fully herein, the claims against this defendant also include a claim for corporate (direct) negligence under *Thompson v. Nason*, 527 Pa. 330, 591 A.2d 703 (1991), and its progeny of case law.  As required by Pennsylvania law, a Certificate of Merit as to this defendant is being filed separately with the Court.

9.    Defendant, The Milton S. Hershey Medical Center ("HMC"), is a domestic non-profit corporation organized and existing under the laws of the laws of the Commonwealth of Pennsylvania, with a principal place of business of 500 University Drive, Hershey, PA 17033. At all relevant times, HMC was engaged in the provision of medical care, treatment, and healthcare services to the public, including members of the public in Pennsylvania such as Plaintiff-decedent, Paola Terolli, deceased, at and/or through the hospital and affiliated medical practices that it owned, managed, maintained, operated, and/or controlled on the campus of Hershey Medical Center, located at 500 University Drive, Hershey, PA 17033, and facilitated healthcare services through referrals to and collaboration with the Penn State Health Division of Gastroenterology, the Penn State Health Gastrointestinal Colorectal Nursing Service, and the Penn State Health Endoscopy Center located at 32 Colonnade Way, State College, PA 16803.  Moreover, Defendant HMC employed physicians, graduate medical trainees (interns, residents, and fellows), nurses, certified registered nurse anesthetists, physician assistants, nurse practitioners, therapists, technicians, medical office assistants, administrators, specialist providers, and other medical staff including

Brian D. Dodson M.D., Janet Cady CRNP, Kofi Clarke M.D., David Mellinger M.D., Guoli Chen M.D., Dawn M Sanzotti PA-C, Killi Jo Simco PA-C, Thu Thi Gazzio RN, Anne Bobb RN, Rayna Craig RN, Jenna Evans RN, Debra Lucas LPN, Erin Keen LPN, Shelly L. Snook LPN, Keira Park LPN, Lindsey Rattray, Jessica Stroud, Brittany Meyers, Alison Houser, Elizabeth Grenoble, Wendy McElwain, Morgan Ross, Gail A. Brown, Theresa L. Davis, Kayle Motes-West, Sarah Worthington, Emlily Clark, and other agents, servants, and employees who purportedly possessed skill and training for the purposes of providing medical care and services to the general public, and Paola Terolli, deceased, in particular. The claims asserted against Defendant HMC are for the professional negligence of these actual, apparent and/or ostensible agents, servants and employees who participated in the care of Ms. Terolli from August 2022 and thereafter, and whose acts and failures to act, described more particularly herein, increased the risk of harm and were substantial factors contributing to Ms. Terolli's catastrophic, debilitating, permanent and ultimately fatal cancer diagnosis leading directly to her death. As stated more fully herein, the claims against this defendant also include a claim for corporate (direct) negligence under *Thompson v. Nason*, 527 Pa. 330, 591 A.2d 703 (1991), and its progeny of case law.  As required by Pennsylvania law, a Certificate of Merit as to this defendant is being filed separately with the Court.

10.     For purposes of this Complaint, Defendants Penn State Health and HMC are collectively referred to herein as the "Penn State Defendants."

11.     At all relevant times, the Penn State Defendants were engaged in the practice of medicine, pursuing their respective specialties and/or health care duties, and were obligated to use the professional skill, knowledge and care which they possessed, and to pursue their professions in accordance with reasonably safe and accepted standards of medicine and professional care in

general, and in their specialties in particular, as well as institutional standards of medical care, in their care of Plaintiff-decedent Paola Terolli.

12.     At all relevant times hereto, the Penn State Defendants engaged as their actual, apparent or ostensible agents, servants and/or employees various healthcare providers, physicians, anesthesiologists, graduate medical trainees (interns, residents, and fellows), nurses, physician assistants, nurse practitioners, therapists, and technicians, who at all times were acting within the course and scope of their agency and/or employment with defendants and under the Penn State Defendants' exclusive control.  The Penn State Defendants are therefore liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of *respondeat superior*, master-servant, agency, and right of control.  The identities of these agents, servants and employees include Brian D. Dodson M.D., Janet Cady CRNP, Kofi Clarke M.D., David Mellinger M.D., Guoli Chen M.D., Dawn M Sanzotti PA-C, Killi Jo Simco PA-C, Thu Thi Gazzio RN, Anne Bobb RN, Rayna Craig RN, Jenna Evans RN, Debra Lucas LPN, Erin Keen LPN, Shelly L. Snook LPN, Keira Park LPN, Lindsey Rattray, Jessica Stroud, Brittany Meyers, Alison Houser, Elizabeth Grenoble, Wendy McElwain, Morgan Ross, Gail A. Brown, Theresa L. Davis, Kayle Motes-West, Sarah Worthington, Emlily Clark, and other healthcare providers, as identified herein and in the medical records, who acted as agents, servants, and employees who acted as agents of the Penn Defendants for purposes of rendering care to patients like Plaintiff-decedent, Paola Terolli.

13.     At all relevant times, Brian D. Dodson M.D., Janet Cady CRNP, Kofi Clarke M.D., David Mellinger M.D., Guoli Chen M.D., Dawn M Sanzotti PA-C, Killi Jo Simco PA-C, Thu Thi Gazzio RN, Anne Bobb RN, Rayna Craig RN, Jenna Evans RN, Debra Lucas LPN, Erin Keen

LPN, Shelly L. Snook LPN, Keira Park LPN, Lindsey Rattray, Jessica Stroud, Brittany Meyers, Alison Houser, Elizabeth Grenoble, Wendy McElwain, Morgan Ross, Gail A. Brown, Theresa L. Davis, Kayle Motes-West, Sarah Worthington, Emlily Clark, and other healthcare providers at the Defendants' facilities and practices, like HMC, the Penn State Health Division of Gastroenterology, the Penn State Health Gastrointestinal Colorectal Nursing Service, and the Penn State Health Endoscopy Center were the actual, apparent and/or ostensible agents and/or employees of one or more of the Penn State Defendants, and acting within the course and scope of their agency and/or employment therewith while providing medical care and treatment to Plaintiff-decedent, Paola Terolli. Accordingly, one or more of the Penn State Defendants are vicariously liable for the negligent acts and omissions of these individuals under theories of *respondeat superior*, ostensible agency, and right of control.

14.    At all relevant times, Plaintiff-decedent, Paola Terolli was under the medical care, treatment, and attendance of the Penn State Defendants, and their respective aforementioned actual, apparent and/or ostensible agents, servants and/or employees, as specifically defined herein, all of whom were acting within the course and scope of their employment or agency with one or more of the Penn State Defendants, and under their right of control.

15.    Defendant, Brian D. Dodson, M.D. is a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, specializing in gastroenterology.  At all relevant times, Dr. Dodson had professional offices or medical practice locations at the Penn State Health Endoscopy Center, 32 Colonnade Way, State College, PA 16803, and/or at Hershey Medical Center, 500 University Drive, Hershey, PA 17033, where he provided medical, treatment, and/or services to patients like Plaintiff-decedent, Paola Terolli. At all relevant times, Dr. Dodson was engaged in

8

the provision of medical care, treatment, and services to patients, including the decedent, Ms. Terolli, at Penn State Health Endoscopy Center, Hershey Medical Center, or other locations owned, operated, and controlled by the Penn State Defendants. During the relevant time period of August 2022 through July 2023, Dr. Dodson was directly employed by one or more of the Penn State Defendants and was at all relevant times described below, acting as an actual or ostensible agent of each of them. Plaintiff is asserting a professional liability claim against this defendant for his own negligent acts and omissions while caring for Ms. Terolli as well as for vicarious liability for the professional negligence of Dr. Dodson's agents, servants and employees, acting on his behalf or subject to his control in the care of Ms. Terolli between August 2022 and July 2023, including Janet Cady CRNP, Kofi Clarke M.D., David Mellinger M.D., Guoli Chen M.D., Dawn M Sanzotti PA-C, Killi Jo Simco PA-C, Thu Thi Gazzio RN, Anne Bobb RN, Rayna Craig RN, Jenna Evans RN, Debra Lucas LPN, Erin Keen LPN, Shelly L. Snook LPN, Keira Park LPN, Lindsey Rattray, Jessica Stroud, Brittany Meyers, Alison Houser, Elizabeth Grenoble, Wendy McElwain, Morgan Ross, Gail A. Brown, Theresa L. Davis, Kayle Motes-West, Sarah Worthington, and Emlily Clark, whose acts and omissions directly and proximately caused Plaintiff-decedent's delay in cancer diagnosis, catastrophic injuries, and death as more specifically described herein. As required by Pennsylvania law, a Certificate of Merit as to this defendant is being filed separately with the Court.

16.     Defendant, Janet Cady, CRNP ("NP Cady") is a certified registered nurse practitioner duly licensed to practice medicine in the Commonwealth of Pennsylvania, specializing in family medicine and gastroenterology.  At all relevant times, NP Cady had a professional office or medical practice located  at the Penn State Health Endoscopy Center, 32 Colonnade Way, State College, PA 16803, where she provided medical, treatment, and/or services to patients like

Plaintiff-decedent, Paola Terolli. At all relevant times, NP Cady was engaged in the provision of medical care, treatment, and services to patients, including the decedent, Ms. Terolli, at Penn State Health Endoscopy Center, or other locations owned, operated, and controlled by the Penn State Defendants. During the relevant time period of August 2022 through July 2023, NP Cady was directly employed by one or more of the Penn State Defendants and was at all relevant times described below, acting as an actual or ostensible agent of each of them. Plaintiff is asserting a professional liability claim against this defendant for her own negligent acts and omissions while caring for Ms. Terolli as well as for vicarious liability for the professional negligence of NP Cady's agents, servants and employees, acting on her behalf or subject to her control in the care of Ms. Terolli between August 2022 and July 2023, including Brian D. Dodson M.D., Kofi Clarke M.D., David Mellinger M.D., Guoli Chen M.D., Dawn M Sanzotti PA-C, Killi Jo Simco PA-C, Thu Thi Gazzio RN, Anne Bobb RN, Rayna Craig RN, Jenna Evans RN, Debra Lucas LPN, Erin Keen LPN, Shelly L. Snook LPN, Keira Park LPN, Lindsey Rattray, Jessica Stroud, Brittany Meyers, Alison Houser, Elizabeth Grenoble, Wendy McElwain, Morgan Ross, Gail A. Brown, Theresa L. Davis, Kayle Motes-West, Sarah Worthington, and Emlily Clark, whose acts and omissions directly and proximately caused Plaintiff-decedent's delay in cancer diagnosis, catastrophic injuries, and death as more specifically described herein. As required by Pennsylvania law, a Certificate of Merit as to this defendant is being filed separately with the Court.

17.     At all relevant times, a physician-patient relationship existed between Plaintiff-decedent, Paola Terolli and each of the Defendants and their agents, servants and/or employees.

18.     At all relevant times, Plaintiff-decedent, Paola Terolli was under the medical and professional care, treatment, and attendance of All Defendants, directly or indirectly, through their agents, servants, and/or employees, who participated in his care as described below.

19.     At all relevant times, All Defendants undertook and/or assumed a duty to Plaintiff-decedent, Paola Terolli, to provide her with timely and appropriate medical care, management, and treatment for her condition and to avoid the risk of harm and additional injury including cancer progression, metastasis of her disease, and death.

20.     At all relevant times, All Defendants had actual or constructive knowledge of the medical and professional care and treatment provided to Plaintiff-decedent, Paola Terolli.

21.     The carelessness and negligence of All Defendants and each of them, jointly and severally, as described herein, increased the risk of harm to Plaintiff-decedent, Paola Terolli and did, in fact, cause her to suffer catastrophic, debilitating, and permanent neurological injuries.

22.     At all relevant times, Plaintiff-decedent, Paola Terolli looked to and relied upon the knowledge, care, skill, treatment and advice of each of the Penn State Defendants, Dr. Dodson, NP Cady, and their respective agents, servants, and employees, in connection with the medical and professional advice, care and treatment that was provided.

23.     As a direct result of the carelessness and negligence of Defendants and each of them, jointly and severally, as described herein, Plaintiff-decedent, Paola Terolli failed to receive proper monitoring, work-up, evaluation, diagnosis, management, intervention and treatment of her condition, and she was exposed to a wholly preventable increased risk of harm, including the delayed diagnosis and resulting progression and metastasis of her cancer, and as a result she was

caused to needlessly suffer catastrophic, painful, debilitating, and ultimately fatal injuries, as described herein and further in her medical records.

24.     At all relevant times, the Penn State Defendants' agents and employees identified herein were engaged in the practice of medicine, pursuing their specialties, and were obliged to bring to bear in the practice of their profession the professional skill, knowledge, and care that they possessed and to pursue their profession in accordance with reasonably safe and accepted standards of medicine, in general, and in their specialties, in particular.

25.     The catastrophic, debilitating, and permanent injuries suffered by Plaintiff-decedent, Paola Terolli were caused solely and exclusively by the conduct of All Defendants, jointly, and severally with their agents, servants and/or employees, as defined herein, and were due in no manner to any act or failure to act on the part of decedent or Plaintiffs.


## JURISDICTION AND VENUE

26.     This Court has diversity jurisdiction over this action because the action is entirely between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

27.     Plaintiff, Kimet Terolli, is an adult individual who at all relevant times has been a citizen of the State of New York, domiciled at the address of 1014 55th Street, Apartment 4A, Brooklyn, NY 11219.

28.     Plaintiff, Kimet Terolli, is the duly appointed Administrator of the Estate of Paola Terolli, deceased, which was raised in the State of New York.

29.     Plaintiff-decedent, Paola Terolli was at all relevant times a citizen of the State of New York, domiciled at the address of 1014 55th Street, Apartment 4A, Brooklyn, NY 11219.

30.     Defendant, Penn State Health is a domestic corporation with its state of incorporation in Pennsylvania and a principal place of business located at 100 Crystal A Drive, Hershey, PA 17033.

31.     Defendant, The Milton S. Hershey Medical Center is a domestic corporation with its state of incorporation in Pennsylvania and a principal place of business located at 500 University Drive, Hershey, PA 17033

32.     Defendant, Brian D. Dodson M.D. is an adult individual who at all relevant times has been a citizen of the Commonwealth of Pennsylvania, domiciled at the address of 209 Fox Chase Drive, Duncansville, PA 16635.

33.     Defendant, Janet Cady CRNP is an adult individual who at all relevant times has been a citizen of the Commonwealth of Pennsylvania, domiciled at the address of 3014 Fairchild Lane, State College, PA 16801.

34.     Based on the foregoing, this Honorable Court has subject matter jurisdiction over the causes of action based on diversity jurisdiction.  28 U.S.C. § 1332(a)(1).

35.     Venue properly lies before this Honorable Court because this action arises out of the acts and omissions of Defendants relative to their medical care and treatment of Plaintiff-decedent, Paola Terolli, at Hershey Medical Center and the Penn State Health Endoscopy Center, both of which are situated within the vicinages of the U.S. District Court for the Middle District of Pennsylvania.

## OPERATIVE FACTS COMMON TO ALL COUNTS

36.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

37.     On August 31, 2022, Plaintiff-decedent Paola Terolli was a promising biomechanical engineering graduate student temporarily residing in State College only for the purpose of attending graduate school at the Pennsylvania State University.

38.     On August 31, 2022, Plaintiff-decedent, Paola Terolli presented to Defendant, Penn State Health's outpatient office, the Penn State Health Endoscopy Center in State College, PA.

39.     On August 31, 2022, Ms. Terolli was seen and assessed by Defendant, Janet Cady CRNP ("NP Cady") for continued evaluation of her Chron's disease, including a recent flare-up of symptoms.

40.     As of August 31, 2022, Ms. Terolli presented to the Penn State Health Endoscopy Center to comply with a recommendation that she undergo repeat colonoscopy to assess her Chron's disease activity given the presence of atypical cells seen on histological sample(s) obtained from past colonoscopy(ies), including one that was performed on February 2, 2022.

41.     At the time of August 31, 2022, Ms. Terolli informed NP Cady and by extension, Dr. Dodson and the Penn State Defendants, that she required repeat colonoscopy based on the findings of clinical and pathological abnormalities on the February 2, 2022 colonoscopy.

42.     At the time of August 31, 2022 and through Ms. Terolli's death in July 2023, NP Cady was practicing under the supervision of physicians who were employed by or agents of Defendants, Penn State Health ("PSH") and/or The Hershey S. Milton Medical Center ("HMC"), such as Brian D. Dodson, M.D. ("Dr. Dodson").

43.    At all times between September 2022 and June 2023, All Defendants were responsible for medical and surgical management of Ms. Terolli's Chron's disease and gastrointestinal symptoms, including the follow-up to her previous colonoscopy, continued physical examination with corresponding assessments and plans, and management of her condition with appropriate imaging, medications, and/or operative intervention.

44.    Prior to November 8, 2022, Defendants, NP Cady, Dr. Dodson, PSH and HMC failed to timely perform a repeat colonoscopy to assess Ms. Terolli despite having all relevant and necessary information about her personal medical and surgical history in order to evaluate her condition.

45.    On November 8, 2022, Dr. Dodson performed the repeat colonoscopy which included regional surveillance biopsies of Ms. Terolli's gastrointestinal anatomy, including specifically the cecum and colon.

46.    During the November 8, 2022 colonoscopy, Dr. Dodson identified and reported seeing three sessile inflammatory polyps in the cecum, which were biopsied with cold forceps.

47.    During the November 8, 2022 colonoscopy, Dr. Dodson identified and reported the presence of one 10-mm inflammatory-appearing sessile polyp in the sigmoid colon, which was resected with cold snares.

48.    During the November 8, 2022 colonoscopy, Dr. Dodson identified and reported his observation of moderate-to-severe/diffuse inflammation, which was characterized by congested (edema), erythema, friability, granularity, loss of vascularity, and mucus in a continuous and circumferential pattern from the anus to the cecum.   Dr. Dodson obtained regional surveillance biopsies with a cold forceps.

49.     During the November 8, 2022 colonoscopy, Dr. Dodson negligently failed to apply any stain in order to test intraoperatively for the appropriate areas to conduct adequately complete testing, biopsy, and evaluation of Plaintiff-decedent for cancer or other malignancy.

50.     During the November 8, 2022 colonoscopy, as a result of his failure to full assess Ms. Terolli's gastrointestinal anatomy, Dr. Dodson negligently failed to obtain complete biopsies of all relevant areas where abnormalities were seen on direct and/or retroflexion visualization.

51.     On November 15, 2022, the Penn State Defendants' employee and/or agent, Guoli Chen, M.D., authored a surgical pathology report with respect to the biopsy specimens obtained during the November 8, 2022 colonoscopy, including the findings of the epithelium specimen which showed: "*atypia suspicious for dysplastic or adenomatous changes, but the presence of significant inflammation makes it difficult to exclude reactive changes. Immunostains do not show apparently aberrant expression of p53, although scattered cells show higher levels of staining.*"

52.     At the time of and after the November 8, 2022 colonoscopy and the November 15, 2022 pathology report, Dr. Dodson, NP Cady, and the Penn State Defendants failed to recommend, consider, order, or perform timely and necessary endoscopic surveillance, appropriate intraoperative staining, and/or more complete, extensive, and/or targeted biopsies as required by the standard of care.

53.     Following the November 15, 2022 surgical pathology report, Dr. Dodson, NP Cady, and the Penn State Defendants negligently failed to promptly and fully investigate, assess, and accordingly intervene in the abnormalities seen on gross observation during the November 8, 2022 colonoscopy

54.    In failing to recommend, consider, order, and/or perform further clinical, radiological, surgical, and pathological investigation, assessment, and intervention of the previously-seen and previously-reported indefinite dysplasia, Dr. Dodson, NP Cady, and the Penn State Defendants negligently failed to account for Ms. Terolli's concerning medical history, and failed to adequately screen Ms. Terolli for cancer, in light of the clinical and histological findings relating to the November 8, 2022 colonoscopy.

55.    In failing to recommend, consider, order, and/or perform further clinical, radiological, surgical, and pathological investigation, assessment, and intervention of the previously-seen and previously-reported indefinite dysplasia, Dr. Dodson, NP Cady, and the Penn State Defendants negligently failed to account for Ms. Terolli's concerning medical history, and failed to adequately screen Ms. Terolli for cancer, in light of the clinical and histological findings relating to her February 2, 2022 colonoscopy.

56.    After the November 8, 2022 colonoscopy, Ms. Terolli continued to follow up with Dr. Dodson and NP Cady at the Penn State Defendants' Endoscopy Center for recurrent flare-ups, but was only medically managed as an outpatient without any sense of urgency, and without any immediate follow-up imaging, surgical evaluations, specialty consultation and/or intervention to investigate the etiology of her dysplasia and corresponding symptomology in violation of the standard of care.

57.    For instance, on November 28, 2022, Ms. Terolli was seen by Defendant, NP Cady, who documented her complaints of increased bowel movement frequency, Bristol type VII stools, rectal discomfort and pain, and bright red blood in her stool.

58.    In addition, on December 19, 2022 laboratory tests showed an elevated calprotectin of 193, well exceeding the normal limits of 50, as acknowledged by NP Cady, the Penn State Health Endoscopy Center and the Penn State Health Gastroenterology/GI Colorectal Nursing Service.

59.    Additionally, on December 20, 2022, Ms. Terolli was seen by Defendant, NP Cady, who documented ongoing flare of Chron's symptoms, Bristol Type V or VI stools, increased gas, bowel movements 4-5 times daily, and bloody stool.

60.    On December 20, 2022, after evaluating Ms. Terolli, no further analysis was done by NP Cady or any of the other Defendants, including ordering abdominal imaging studies or recommending/considering orders for further surgical exploration and/or biopsy to ascertain the potential causes of the ongoing severe symptoms, the indefinite dysplasia, and the other medical and presurgical history regarding Paola Terolli's condition.

61.    Moreover, on December 23, 2022, Ms. Terolli's stool inflammatory markers were elevated.

62.    On January 31, 2023, Ms. Terolli again presented to Defendant, NP Cady, for evaluation of her Chron's disease and ileocolitis, including still having 4 loose bowel movements daily, but Defendants maintained the status quo and failed to conduct any necessary surveillance and/or follow-up care with any sense of urgency, in violation of the standard of care given the abnormal gross observations seen during the November 8, 2022 colonoscopy and the indeterminate dysplasia seen histologically from the incomplete and improper biopsy specimens obtained.

63.    Indeed, at the time of the January 31, 2023 appointment, the Penn State Defendants' employee/agent, Kofi Clarke, M.D., was not able to evaluate Ms. Terolli at Defendant, HMC, until

September 7, 2023 and All Defendants failed to consider scheduling her at an earlier date, with either Defendant, Dr. Dodson (who negligently performed the November 8, 2022 colonoscopy) or another available physician in the Penn State Defendants' Division of Gastroenterology.

64.    Defendants' failure to schedule Paola Terolli for the necessary follow up, including but not limited to repeat colonoscopy, additional and/or more targeted surveillance biopsies and/or any abdominal imaging, as the standard of care required; as a result of this individual failure of NP Cady and Dr. Dodson, and the systemic failure on the part of the Penn State Defendants, Ms. Terolli was not scheduled until September 7, 2023.

65.    On April 4, 2023, NP Cady sent Dr. Dodson an email and/or secure chat message requested, "*can we review this patient's case please?*" with respect to laboratory analysis of bloodwork that had been performed.

66.    Prior to April 4, 2023, NP Cady and Dr. Dodson failed to engage in any comprehensive and/or meaningful discussion regarding Ms. Terolli's medical care, her symptoms, the relevant examinations, presentations, evaluations, colonoscopy, and testing that had been performed, and the plan for fully investigating, assessing, and treating her condition.

67.    On May 10, 2023, Ms. Terolli presented to NP Cady at Defendants, PSH and HMC's facility, Penn State Health Endoscopy Center where she complained of continued bilateral lower abdominal discomfort, random sharp umbilical pain with bending over or turning in bed, and still approximately 4-5 loose bowel movements daily.

68.    On May 10, 2023, Ms. Terolli was merely medically managed, without any radiological imaging or intervention, and instructed to return to the office in two months, "sooner

if needed", even though her presentation clearly called for a prompt and urgent investigation of the indeterminate dysplasia from the colonoscopy biopsies, which were incomplete.

69.     Despite the myriad of complaints Ms. Terolli conveyed to Defendants during clinical evaluations, her concerning gastrointestinal history known to Defendants at the time of her presentation in August/September 2022, the abnormal gross observations seen during the November 8, 2022 colonoscopy, and the indeterminate dysplasia seen histologically from the incomplete and improper biopsy specimens obtained, Defendants did absolutely nothing to further investigate the etiology and severity of her complaints, failed to screen her appropriately for cancer, and did not even consider whether her disease process had progressed to a pathological malignancy.

70.     On June 16, 2023, Ms. Terolli presented to the Emergency Department of Mount Nittany Medical Center ("MNMC") with severe abdominal pain.

71.     On June 16, 2023, Ms. Terolli underwent CT of the abdomen with contrast which revealed a malignant mass malignancy in the transverse colon, measuring approximately 9.4 by 5.2 cm with exophytic component extending into the mesentery, lymphadenopathy with possible peritoneal involvement, and numerous hypodense hepatic lesions consistent with metastatic adenocarcinoma (with a primary site in the colon).

72.     Based on Ms. Terolli's June 16, 2023 abdominal CT, the team of MNMC providers involved in her care determined she required admission for further evaluation, biopsy of the mass, and consultation with the oncology service.

73.     On June 17, 2023, the MNMC oncology service characterized the mass that was seen on imaging as "*highly suggestive of colon cancer.*"

74.    On June 17, 2023, the MNMC oncology service stated it "*would be surprising that she would have metastatic colon cancer after having a fairly normal colonoscopy*" based in large part on the negligence of Defendants who did not inappropriately manage Ms. Terolli as if her colonoscopy from November 8, 2022 was normal even though there were gross and microscopic abnormalities that required further assessment and workup pursuant to the standard of care.

75.    On June 17, 2023, the MNMC oncology service stated that "*if she is found to have colon cancer, unfortunately this would be stage IV...*"

76.    On June 17, 2023, the MNMC gastroenterology service recorded that there was "*evidence of active disease*" specifically at the time of the November 8, 2022 colonoscopy, relating to the now ">*9cm mass in the transverse colon with multiple liver lesions concerning for primary as well as metastatic disease.*"

77.    On June 19, 2023, Ms. Terolli underwent repeat colonoscopy at MNMC which identified an "*infiltrative partially obstructing large mass was found*" in the proximal transverse colon, which was oozing, measured 7cm in length and 33mm (2/3 of the lumen circumference), and was biopsied using a cold forceps.

78.    On June 19, 2023, Ryan Ridenour M.D. and Dustin Case, D.O. of the MNMC gastroenterology service documented the following clinical impression with respect to the repeat colonoscopy: "*malignant partially obstructing tumor in the proximal transverse colon biopsied. Chron's disease with colonic involvement. Inflammation was found from the anus to the cecum. This was moderate in severity. Biopsied.*"

79.     On June 19, 2023, Ms. Terolli was discharged from MNMC and returned to New York (her domicile) for oncology treatment at Lenox Hill Hospital and Memorial Sloan Kettering Cancer Center ("MSKCC").

80.     On June 20, 2023, MNMC pathologist Paul Murray M.D. recorded in his surgical pathology report that Ms. Terolli's "*very large transverse colon mass*" showed microscopic findings indicative of malignancy including: "*abundant necrosis and crushed atypical cells. The vast majority of the specimen consists of necrosis.*"

81.     On June 23, 2023, Ms. Terolli underwent a percutaneous, ultrasound-guided biopsy of the liver at Lenox Hill Hospital, where the intervention radiology service reported: "*multiple hypoechoic masses are demonstrated throughout the liver.  A hypoechoic mass at the inferior aspect of the right hepatic lobe was biopsied…*"

82.     On June 27, 2023, the Lenox Hill Hospital issued a Radiology Report of the fine needle aspiration of the right liver, which indicated: "*rare clusters of atypical cells suspicious for malignancy, best seen on cellblock.*"

83.     On June 28, 2023, the Lenox Hill Hospital-Northwell Health Laboratories issued a Cytopathology Report regarding a core biopsy of the right liver lesion, showing there was "*poorly preserved and degenerated atypical cells suspicious for malignancy in the background of extensive necrosis.*"

84.     On June 28, 2023, the Lenox Hill Hospital surgical pathology report further indicated that immunohistochemical stains showed "*increase proliferative activity with Ki-67 and weak positivity for synaptophysin…Findings are suggestive of malignancy…Repeat biuopsy should be considered for definitive diagnosis*."

85.    In late June and throughout July 2023, Ms. Terolli received cancer treatment at MSKCC but it proved to be futile due to the advanced stage of her cancer caused by Defendants' negligence as alleged herein.

86.    On July 19, 2023, despite undergoing extremely painful and discomforting treatments at MSKCC, Ms. Terolli died just four days after turning 25 years old.

87.    On July 21, 2023, an autopsy was performed by Forensic Pathologist and Neuropathologist Zhongxue Hua, M.D., Ph.D., who observed a 3 x 3 x 2 inch mass in the ascending colon at the ileocecal junction with tumor necrosis.

88.    On July 21, 2023, in addition to the large ileocecal tumor seen during the gross observations on autopsy, Dr. Hua also documented her finding of "*multiple foci (at least 250) of well-demarcated, infiltrating tumors (ranging from less than ¼" x ¼" x ¼" to 2" x 2" x 2" each)…*"

89.    Between the time of the July 21, 2023 autopsy and the final autopsy report dated August 16, 2023, Dr. Hua reviewed postmortem histopathology specimens, including the ileocecal tumor which confirmed her diagnosis of primary colon cancer with metastases, as follows:

    a.    "*Colon (ileocecal mass) with poorly differentiated adenocarcinoma*";

    b.    "*Liver with metastatic, poorly differentiated adenocarcinoma (of colonic origin)*";

    c.    "*infiltrating, poorly differentiated adenocarcinoma of colon*"; and

    d.    "*metastatic foci of poorly differentiated adenocarcinoma most consistent with colonic region.*"

90.    On August 10, 2023, a forensic toxicology report indicated that Ms. Terolli was heavily medicated with benzodiazepines and opioids (e.g., lorazepam, fentanyl, morphine,

norfentanyl) in an attempt to alleviate the severe, conscious physical and emotional pain caused by her cancer diagnosis and the tremendous discomfort and suffering associated with her treatment at MSKCC.

91.    Prior to the negligent care provided by the Penn State Defendants, Plaintiff-decedent Paola Terolli was a healthy, inquisitive, talented and intelligent young woman with extraordinary potential to be a have a successful career as an engineer and whose personal interest, hobbies, and relationships were cut short all due to the negligence of the Penn State Defendants and their agents, including specifically Dr. Dodson and NP Cady as specified herein.

92.    Plaintiff, Kimet Terolli as Ms. Terolli's surviving father, along with Ms. Terolli's surviving mother and Wrongful Death Act beneficiary, Mimoza Cekani, have endured the most agonizing loss that a parent can experience and therefore seeks all recoverable damages under the Wrongful Death Act as specified further below.

93.    The severe and permanent damages by Plaintiff, Kimet Terolli and his late daughter's Estate were avoidable had the Defendants adhered to the standard of care during their medical treatment.

94.    All Defendants and their agents, servants, and/or employees undertook and/or assumed a duty to Paola Terolli to provide her with reasonable, competent, skilled, proper, and adequate medical evaluation, care, monitoring, advice, diagnoses, treatment, and management, and to take appropriate measures to ensure her safety and physical well-being, and to avoid the risk of harm and injury to her.

95.     Paola Terolli relied on the medical knowledge, training, skill, advice and treatment of defendants and their agents, servants, and/or employees, identified herein, in their care and treatment of her.

96.     All Defendants and their agents, servants, and/or employees treated Paola Terolli without the appropriate level of knowledge, training, skill, or advice.

97.     The carelessness and negligence of All Defendants, acting by and through their agents, servants, and/or employees, as identified herein, jointly and severally increased the risk of harm to Paola Terolli and did, in fact, cause her to suffer permanent, catastrophic, and ultimately fatal injuries.

98.     As a direct result of the negligence of defendants and their agents, servants, and/or employees, as identified herein, Paola Terolli's condition was allowed to deteriorate and she was caused to suffer the catastrophic, debilitating, and permanent injuries to the nerves, vessels, tissues, muscles, and vital organs of her body, directly and proximately leading to her death and giving rise to economic and non-economic damages, as follows:

    a.  aggravation of gastrointestinal symptomology;
    b.  advanced stage cancer;
    c.  various medical and surgical interventions associated with chemotherapy, immunotherapy, radiation, producing physical pain and discomfort;
    d.  need for far more aggressive and debilitating cancer treatments;
    e.  organ failure, malnutrition, infection and/or increased susceptibility to infection, and respiratory distress;
    f.  protracted surgical, medical, and oncological interventions and treatments;
    g.  conscious physical pain and suffering;
    h.  fear of impending death and progression/spread of metastatic disease;
    i.  severe mental anguish, anxiety, panic, fright and emotional distress;
    j.  lost opportunity for treatment with diminution of probability of survival;
    k.  disfigurement;
    l.  embarrassment and humiliation;
    m.  loss of enjoyment of life and life's pleasures;
    n.  loss of the value of household services;

o.   loss of the pecuniary value of services, support, companionship, and society;
p.   consequential and/or special damages;
q.   medical expenses;
r.   funeral, burial, and estate administration expenses;
s.   loss of past wages;
t.   loss of future earnings and earning capacity;
u.   pre-judgment, delay damages, and all other interest recoverable;
v.   all injuries and damages described in the medical records.

99.    Had Defendants and their agents, servants, and/or employees, identified herein, acted in accordance with accepted standards of care and promptly and properly diagnosed and treated Paola Terolli in a timely and appropriate manner, she would not have suffered the foregoing catastrophic physical injuries leading to and directly causing her death.

100.    The economic and non-economic injuries, damages and losses suffered by Plaintiff-decedent, her Estate, and her beneficiaries, as described herein were caused solely and exclusively by the negligence of All Defendants and/or their agents, servants, and employees, as identified herein, jointly, and severally, and were not caused or contributed to by any act or failure to act on the part of Plaintiff or Plaintiff-decedent, Paola Terolli.

## COUNT I – NEGLIGENCE (VICARIOUS LIABILITY)
**Plaintiff, Kimet Terolli Individually and as Administrator of the Estate of Paola Terolli, deceased v. Defendants, Penn State Health and The Milton S. Hershey Medical Center (collectively, "Penn State Defendants")**

101.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

102.    The negligent acts and omissions of the Penn State Defendants, acting by and through their physicians, fellows, residents, interns, physician assistants, nurse practitioners, nurses, therapists, and other ancillary staff for whom there are derivatively liable, as described herein, consisted of one or more of the following:

a.     failure to use appropriate and necessary surgical techniques and/or interventions that would diagnose, treat, and manage Paola Terolli's symptoms and condition;

b.     failure to use appropriate and necessary imaging studies and modalities to diagnose, treat, intervene, and manage Paola Terolli's symptoms and condition;

c.     failure to fully appreciate Paola Terolli's personal, family, surgical, and preoperative medical history;

d.     failure to perform necessary and complete presurgical evaluations, testing, imaging, and assessment of Paola Terolli prior to the November 8, 2022 colonoscopy;

e.     failure to formulate an appropriate surgical plan for Paola Terolli's November 8, 2022 colonoscopy;

f.     failure to formulate a proper postoperative management treatment plan following Paola Terolli's November 8, 2022 colonoscopy;

g.     failure to order, recommend and/or refer Paola Terolli for specialty consultations in light of the absence of any clear, definitive and/or unifying diagnosis before, during or after the November 8, 2022 colonoscopy;

h.     failure to order, recommend, and/or perform colectomy;

i.     failure to apply intraoperative stains during the November 8, 2022 colonoscopy;

j.     failure to consider and/or order prompt repeat examination and colonoscopy by an experienced endoscopist;

k.     failure to repeat surveillance colonoscopy and/or endoscopy with targeted biopsy;

l.     failure to order and perform continued endoscopic surveillance at frequent intervals

m.     failure to perform high-definition dye spray chromoendoscopy under optimized viewing conditions;

n.     failure to appreciate, identify, diagnose, and resect pathological tumor site(s) during the November 8, 2022 colonoscopy;

o.     failure to order, recommend, consider, and/or perform repeat surveillance colonoscopy and/or biopsy following the November 8, 2022 procedure;

p.     failure to further investigate the abnormalities observed intraoperatively during the November 8, 2022 colonoscopy;

q.    failure to further investigate the abnormalities observed histologically during the November 8, 2022 colonoscopy;

r.    failure to utilize appropriate surgical tools or devices for purposes of fully examining Paola Terolli's colon during the November 8, 2022 colonoscopy;

s.    failure to treat Paola Terolli's condition with the requisite urgency through specialty consultations, detailed imaging modalities, and further surgical investigation into the abnormalities seen relative to the November 8, 2022 colonoscopy;

t.    failure to formulate an appropriate intraoperative plan in the event of abnormalities seen on gross observation during the November 8, 2022 colonoscopy;

u.    failure to conform to the requisite standards of gastroenterology care on November 8, 2022;

v.    failure to take reasonably prudent and necessary action in response to the November 8, 2022 colonoscopy and associated symptoms and medical history of Paola Terolli;

w.    failure to timely diagnose and treat Paola Terolli's colon cancer based on the November 8, 2022 colonoscopy and her presurgical medical history;

x.    failure to promptly and completely perform colonoscopy and necessary surgical, radiological, and clinical examination of Paola Terolli to rule out a pathological or malignant cause/etiology of her symptoms and disease process;

y.    failure to make proper recommendations for follow up and treatment from Paola Terolli's prior surgical procedures upon presentation in August/September 2022;

z.    failure to timely and adequately consider the presence of cancer and screen completely for cancer at the time of Paola Terolli's presentation in August/September 2022;

aa.    failure to compare the findings of the November 8, 2022 colonoscopy to previous colonoscopies and gastroenterology treatment of Paola Terolli's condition;

bb.    failure to properly and reasonably supervise other healthcare providers and medical staff under Defendant's control and direction in the care and treatment of Paola Terolli;

cc.    failure to identify that the findings of the November 8, 2022 colonoscopy were suspicious for adenocarcinoma or another malignant process warranting closer examination;

dd.    failure to order, perform or recommend any necessary radiological imaging of Paola Terolli's abdomen and/or gastrointestinal anatomy before or after the November 8, 2022 colonoscopy for necessary surveillance and monitoring of Paola Terolli's condition;

ee.    failure to properly interpret and report progression, growth, differences in morphology, or other abnormal and irregular changes relative to potential malignant tissue in the colon of Paola Terolli before during or after the November 8, 2022 colonoscopy;

ff.    failure to recommend follow-up surgical biopsy after the November 8, 2022 colonoscopy in the face of suspicious findings concerning the gastrointestinal anatomy of Paola Terolli;

gg.    failure to follow-up on the suspicious findings from the histological irregularities documented in the surgical pathology reports of Paola Terolli's colonoscopies;

hh.     failure to diagnose and appreciate the significance of suspicious findings on Paola Terolli's colonoscopy of November 8, 2022; and

ii.     failure to directly communicate with Paola Terolli's primary care physician and/or other health care providers on or after the November 8, 2022 colonoscopy.

103.     At all relevant times, one or more of the Penn State Defendants engaged Brian D. Dodson M.D., Janet Cady CRNP, Kofi Clarke M.D., David Mellinger M.D., Guoli Chen M.D., Dawn M Sanzotti PA-C, Killi Jo Simco PA-C, Thu Thi Gazzio RN, Anne Bobb RN, Rayna Craig RN, Jenna Evans RN, Debra Lucas LPN, Erin Keen LPN, Shelly L. Snook LPN, Keira Park LPN, Lindsey Rattray, Jessica Stroud, Brittany Meyers, Alison Houser, Elizabeth Grenoble, Wendy McElwain, Morgan Ross, Gail A. Brown, Theresa L. Davis, Kayle Motes-West, Sarah Worthington, Emlily Clark, and other healthcare providers at PSH and HMC as their agents, servants and/or employees to provide medical care and treatment to Paola Terolli while acting within the course and scope of their agency and/or employment with the Penn State Defendants during the time period of August 2022 and July 2023.

104.     Based on the foregoing, one or more of the Penn State Defendants are derivatively liable for the negligent acts and omissions of these individuals under principles of *respondent superior*, master servant, vicarious liability, agency and/or right of control.

105.     The foregoing negligence of the Penn State Defendants and their aforementioned agents, servants and employees increased the risk of harm to, and directly and proximately caused the catastrophic and fatal injuries sustained by Paola Terolli.

106.    As a direct and proximate result of the negligent acts and omissions of the Penn State Defendants and their agents, servants and/or employees, as described herein, Ms. Terolli was deprived of necessary, timely and appropriate evaluation, diagnosis, treatment, and management of her condition.

107.    As a direct and proximate result of the negligence of the Penn State Defendants, as described herein, Ms. Terolli suffered catastrophic and fatal injuries and associated damages therefrom.

**WHEREFORE**, Plaintiff demands judgement against Defendants, Penn State Health and The Milton S. Hershey Medical Center, individually, and jointly and severally with other Defendants, and damages in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interests and costs.

## COUNT II – CORPORATE NEGLIGENCE (DIRECT LIABILITY)
**Plaintiff, Kimet Terolli Individually and as Administrator of the Estate of Paola Terolli, deceased v. Defendants, Penn State Health and The Milton S. Hershey Medical Center (collectively, "Penn State Defendants")**

108.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

109.    In addition to the derivative and vicarious liability of the Penn State Defendants for the negligent acts and omissions of their agents, servants and employees, as defined above, these Defendants owed direct and non-delegable duties to Plaintiff-decedent, Paola Terolli, under the tenets set forth in *Thompson v. Nason*, 591 A.2d 709 (Pa. 1991) and its case law progeny.

110.    The duties of the Penn State Defendants included, *inter alia*: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent medical professionals; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients.

111.    The Penn State Defendants are comprehensive health care centers responsible for arranging and coordinating the total health care of its patients, including Plaintiff-decedent, Paola Terolli.

112.    The Penn State Defendants had a duty to Plaintiff-decedent, Paola Terolli to exercise reasonable care in the appointment and reappointment of physicians, individuals responsible for decisions regarding patients, fellows, residents, interns, physician assistants, nurse practitioners, nurses, therapists, and technicians.

113.    The Penn State Defendants had a duty to their patients, and to Plaintiff-decedent, Paola Terolli, in particular, to provide reasonable and competent medical care and services and to

avoid conduct that would increase the risk of harm and/or in fact cause harm to its patients, including Ms. Terolli.

114.    It is believed and therefore averred that the physicians, nursing, staff, and technical staff of the Penn State Defendants who participated in the care of Plaintiff-decedent, Paola Terolli at PSH and HMC, as more particularly defined herein, did not possess the requisite training, experience, technical skills, and judgment to render proper care and services to patients with Ms. Terolli's clinical presentation and medical needs.

115.    The Penn State Defendants knew or should have known that their physicians, fellows, residents, interns, physician assistants, nurse practitioners, nurses, therapists, and technicians were not qualified to provide competent medical care and treatment to its patients, and to Plaintiff-decedent, Paola Terolli, in particular.

116.    The Penn State Defendants had an obligation to formulate, adopt and enforce adequate policies and procedures to ensure the safe and appropriate treatment to its patients such as Plaintiff-decedent, Paola Terolli.

117.    The Penn State Defendants were negligent in failing to supervise and monitor the medical care and treatment rendered to Plaintiff-decedent, Paola Terolli, when they knew or should have known that their physicians, fellows, residents, interns, physician assistants, nurse practitioners, nurses, therapists and technicians who were charged with and responsible for her care did not possess the requisite medical training, skill, knowledge and/or competency to properly care for her.

118.    The Penn State Defendants were negligent in failing to properly determine the qualifications and proficiencies of those physicians, fellows, residents, interns, physician assistants,

nurse practitioners, nurses, therapists, and technicians involved in Plaintiff-decedent, Paola Terolli's medical care between August 2022 and her death, as described herein.

119.    The corporate negligence of the Penn State Defendants arising out of the medical care and treatment provided and/or negligently not provided to Plaintiff-decedent, Paola Terolli, as described herein, consisted of one or more of the following:

a.    failing to have physicians, interns, residents and fellows, technicians and nurses appropriate in number, training, and/or experience to make appropriate and timely decisions regarding the evaluation, diagnosis, treatment and management of patients with signs and symptoms and clinical history like that of Ms. Terolli, as more particularly described herein;

b.    failing to have physicians, interns, residents, fellows, technicians and nurses appropriate in number, training, and/or experience to make appropriate and timely decisions with respect to the evaluation, diagnosis, treatment and surgical management of patients who present to the hospital with a clinical history, postoperative physical signs and symptoms, and/or results of diagnostic studies such as those demonstrated by Ms. Terolli, as more particularly described herein;

c.    failing to ensure that Ms. Terolli received appropriate attention from fully trained and experienced physicians, interns, residents, fellows, nursing staff and technicians able to make appropriate and timely decisions regarding the evaluation, diagnosis, treatment and surgical management of patients exhibiting clear signs of intraoperative complications and neurological compromise like that of Ms. Terolli, as described herein;

d.    failing to select and retain physicians, nurses, physician assistants, nurse practitioners, technicians and other medical staff competent in the evaluation, diagnosis, treatment and management of patients exhibiting clear signs of intraoperative complications and neurological compromise like that of Ms. Terolli, as described herein;

e.    failing to oversee all persons who practice medicine and surgery within its walls as to patient care to assure that Ms. Terolli's medical condition and risk of additional harm were appropriately and timely evaluated, assessed, managed and treated;

f.    failing to formulate, adopt and enforce adequate policies and procedures to ensure quality patient care, including written policies and procedures regarding:

i.    the need to use appropriate and necessary surgical techniques and/or interventions that would diagnose, treat, and manage Paola Terolli's symptoms and condition;

ii.    the need to use appropriate and necessary imaging studies and modalities to diagnose, treat, intervene, and manage Paola Terolli's symptoms and condition;

iii.    the need to fully appreciate Paola Terolli's personal, family, surgical, and preoperative medical history;

iv.  the need to perform necessary and complete presurgical evaluations, testing, imaging, and assessment of Paola Terolli prior to the November 8, 2022 colonoscopy;

v.  the need to formulate an appropriate surgical plan for Paola Terolli's November 8, 2022 colonoscopy;

vi.  the need to formulate a proper postoperative management treatment plan following Paola Terolli's November 8, 2022 colonoscopy;

vii.  the need to order, recommend and/or refer Paola Terolli for specialty consultations in light of the absence of any clear, definitive and/or unifying diagnosis before, during or after the November 8, 2022 colonoscopy;

viii.  the need to order, recommend, and/or perform colectomy;

ix.  the need to apply intraoperative stains during the November 8, 2022 colonoscopy;

x.  the need to consider and/or order prompt repeat examination and colonoscopy by an experienced endoscopist;

xi.  the need to repeat surveillance colonoscopy and/or endoscopy with targeted biopsy;

xii.  the need to order and perform continued endoscopic surveillance at frequent intervals

xiii.  the need to perform high-definition dye spray chromoendoscopy under optimized viewing conditions;

xiv.  the need to appreciate, identify, diagnose, and resect pathological tumor site(s) during the November 8, 2022 colonoscopy;

xv.  the need to order, recommend, consider, and/or perform repeat surveillance colonoscopy and/or biopsy following the November 8, 2022 procedure;

xvi.  the need to further investigate the abnormalities observed intraoperatively during the November 8, 2022 colonoscopy;

xvii.  the need to further investigate the abnormalities observed histologically during the November 8, 2022 colonoscopy;

xviii.  the need to utilize appropriate surgical tools or devices for purposes of fully examining Paola Terolli's colon during the November 8, 2022 colonoscopy;

xix.  the need to treat Paola Terolli's condition with the requisite urgency through specialty consultations, detailed imaging modalities, and further surgical investigation into the abnormalities seen relative to the November 8, 2022 colonoscopy;

xx.  the need to formulate an appropriate intraoperative plan in the event of abnormalities seen on gross observation during the November 8, 2022 colonoscopy;

xxi.  the need to conform to the requisite standards of gastroenterology care on November 8, 2022;

xxii.  the need to take reasonably prudent and necessary action in response to the November 8, 2022 colonoscopy and associated symptoms and medical history of Paola Terolli;

xxiii.  the need to timely diagnose and treat Paola Terolli's colon cancer based on the November 8, 2022 colonoscopy and her presurgical medical history;

xxiv.  the need to promptly and completely perform colonoscopy and necessary surgical, radiological, and clinical examination of Paola Terolli to rule out a pathological or malignant cause/etiology of her symptoms and disease process;

xxv.  the need to make proper recommendations for follow up and treatment from Paola Terolli's prior surgical procedures upon presentation in August/September 2022;

xxvi.  the need to timely and adequately consider the presence of cancer and screen completely for cancer at the time of Paola Terolli's presentation in August/September 2022;

xxvii.  the need to compare the findings of the November 8, 2022 colonoscopy to previous colonoscopies and gastroenterology treatment of Paola Terolli's condition;

xxviii.  the need to properly and reasonably supervise other healthcare providers and medical staff under Defendant's control and direction in the care and treatment of Paola Terolli;

xxix.  the need to identify that the findings of the November 8, 2022 colonoscopy were suspicious for adenocarcinoma or another malignant process warranting closer examination;

xxx.  the need to order, perform or recommend any necessary radiological imaging of Paola Terolli's abdomen and/or gastrointestinal anatomy before or after the November 8, 2022 colonoscopy for necessary surveillance and monitoring of Paola Terolli's condition;

xxxi.  the need to properly interpret and report progression, growth, differences in morphology, or other abnormal and irregular changes relative to potential malignant tissue in the colon of Paola Terolli before during or after the November 8, 2022 colonoscopy;

xxxii.  the need to recommend follow-up surgical biopsy after the November 8, 2022 colonoscopy in the face of suspicious findings concerning the gastrointestinal anatomy of Paola Terolli;

xxxiii.  the need to follow-up on the suspicious findings from the histological irregularities documented in the surgical pathology reports of Paola Terolli's colonoscopies;

xxxiv.  the need to diagnose and appreciate the significance of suspicious findings on Paola Terolli's colonoscopy of November 8, 2022; and

xxxv.  the need to directly communicate with Paola Terolli's primary care physician and/or other health care providers on or after the November 8, 2022 colonoscopy.

120.    In violation of the accepted standard of care, the Penn State Defendants did not have adequate policies and/or procedures implemented as of August 2022 and thereafter during Plaintiff-decedent, Paola Terolli's care, as described above, and/or if such policies were in place, the Penn State Defendants failed to ensure that its physicians, fellows, residents, interns, physician assistants, nurse practitioners, nurses, therapists, and technician staff were aware of, familiar with, and adhered to such policies.

121.    The Penn State Defendants knew or should have known that it did not have adequate written policies and procedures in place, as described above, and that its employee-agents who were healthcare providers did not follow these protocols.

122.    The Penn State Defendants knew or should have known that its physicians, fellows, residents, interns, physician assistants, nurse practitioners, nursing, therapists, and technician staff were not familiar with and/or failed to follow the hospital's written policies and procedures applicable to patients with respect to the matters described above, if they existed.

123.    The foregoing negligence of the Penn State Defendants increased the risk of harm to, and directly and proximately caused the catastrophic and fatal injuries of Plaintiff-decedent, Paola Terolli.

124.    As a direct and proximate result of the corporate negligence of the Penn State Defendants as described herein, Plaintiff-decedent, Paola Terolli was deprived of necessary, timely and appropriate evaluation, diagnosis, treatment, and management of her condition.

125.    As a direct and proximate result of the corporate negligence of the Penn State Defendants, Plaintiff-decedent, Paola Terolli and her Estate and her beneficiaries suffered catastrophic and fatal injuries, substantial economic and non-economic damages, and other permanent losses, as described herein.

**WHEREFORE**, Plaintiff demands judgment against the Penn State Defendants individually, and jointly and severally with other Defendants, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interest and costs.

## COUNT III – NEGLIGENCE
### Plaintiff, Kimet Terolli Individually and as Administrator of the Estate of Paola Terolli, deceased v. Brian D. Dodson, M.D. ("Dr. Dodson")

126.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

127.    The negligent acts and omissions of Defendant Dr. Dodson in the medical evaluation, treatment and management of Plaintiff-decedent, Paola Terolli as a physician specializing in gastroenterology, consisted of one or more of the following:

a.    failure to use appropriate and necessary surgical techniques and/or interventions that would diagnose, treat, and manage Paola Terolli's symptoms and condition;

b.    failure to use appropriate and necessary imaging studies and modalities to diagnose, treat, intervene, and manage Paola Terolli's symptoms and condition;

c.    failure to fully appreciate Paola Terolli's personal, family, surgical, and preoperative medical history;

d.    failure to perform a complete presurgical evaluations, testing, imaging, and assessment of Paola Terolli prior to the November 8, 2022 colonoscopy;

e.    failure to formulate an appropriate surgical plan for Paola Terolli's November 8, 2022 colonoscopy;

f.    failure to formulate a proper postoperative management treatment plan following Paola Terolli's November 8, 2022 colonoscopy;

g.    failure to order, recommend and/or refer Paola Terolli for specialty consultations in light of the absence of any clear, definitive and/or unifying diagnosis before, during or after the November 8, 2022 colonoscopy;

h.    failure to order, recommend, and/or perform colectomy;

i.    failure to apply intraoperative stains during the November 8, 2022 colonoscopy;

j.    failure to consider and/or order prompt repeat examination and colonoscopy by an experienced endoscopist;

k.    failure to repeat surveillance colonoscopy and/or endoscopy with targeted biopsy;

l.    failure to order and perform continued endoscopic surveillance at frequent intervals

m.    failure to perform high-definition dye spray chromoendoscopy under optimized viewing conditions;

n.    failure to appreciate, identify, diagnose, and resect pathological tumor site(s) during the November 8, 2022 colonoscopy;

o.    failure to order, recommend, consider, and/or perform repeat surveillance colonoscopy and/or biopsy following the November 8, 2022 procedure;

p.    failure to further investigate the abnormalities observed intraoperatively during the November 8, 2022 colonoscopy;

q.    failure to further investigate the abnormalities observed histologically during the November 8, 2022 colonoscopy;

r.    failure to utilize appropriate surgical tools or devices for purposes of fully examining Paola Terolli's colon during the November 8, 2022 colonoscopy;

s.    failure to treat Paola Terolli's condition with the requisite urgency through specialty consultations, detailed imaging modalities, and further surgical

investigation into the abnormalities seen relative to the November 8, 2022 colonoscopy;

t.    failure to formulate an appropriate intraoperative plan in the event of abnormalities seen on gross observation during the November 8, 2022 colonoscopy;

u.    failure to conform to the requisite standards of gastroenterology care on November 8, 2022;

v.    failure to take reasonably prudent and necessary action in response to the November 8, 2022 colonoscopy and associated symptoms and medical history of Paola Terolli;

w.    failure to timely diagnose and treat Paola Terolli's colon cancer based on the November 8, 2022 colonoscopy and her presurgical medical history;

x.    failure to promptly and completely perform colonoscopy and necessary surgical, radiological, and clinical examination of Paola Terolli to rule out a pathological or malignant cause/etiology of her symptoms and disease process;

y.    failure to make proper recommendations for follow up and treatment from Paola Terolli's prior surgical procedures upon presentation in August/September 2022;

z.    failure to timely and adequately consider the presence of cancer and screen completely for cancer at the time of Paola Terolli's presentation in August/September 2022;

aa.    failure to compare the findings of the November 8, 2022 colonoscopy to previous colonoscopies and gastroenterology treatment of Paola Terolli's condition;

bb.    failure to properly and reasonably supervise other healthcare providers and medical staff under Defendant's control and direction in the care and treatment of Paola Terolli;

cc.    failure to identify that the findings of the November 8, 2022 colonoscopy were suspicious for adenocarcinoma or another malignant process warranting closer examination;

dd.    failure to order, perform or recommend any necessary radiological imaging of Paola Terolli's abdomen and/or gastrointestinal anatomy before or after the November 8, 2022 colonoscopy for necessary surveillance and monitoring of Paola Terolli's condition;

ee.    failure to properly interpret and report progression, growth, differences in morphology, or other abnormal and irregular changes relative to potential malignant tissue in the colon of Paola Terolli before during or after the November 8, 2022 colonoscopy;

ff.    failure to recommend follow-up surgical biopsy after the November 8, 2022 colonoscopy in the face of suspicious findings concerning the gastrointestinal anatomy of Paola Terolli;

gg.    failure to follow-up on the suspicious findings from the histological irregularities documented in the surgical pathology reports of Paola Terolli's colonoscopies;

hh.    failure to diagnose and appreciate the significance of suspicious findings on Paola Terolli's colonoscopy of November 8, 2022; and

ii.    failure to directly communicate with Paola Terolli's primary care physician and/or other health care providers on or after the November 8, 2022 colonoscopy.

128.    In addition, inasmuch as Dr. Dodson supervised the medical care provided to Ms.

Terolli between August 2022 through July 2023, including treatment surrounding the November

8, 2022 colonoscopy, Plaintiff alleges Dr. Dodson negligently supervised other healthcare practitioners and providers, as specified herein, including in particular Janet Cady CRNP.

129.    The foregoing negligence of Defendant Dr. Dodson increased the risk of harm, including the risk of cancer progression and death, to Plaintiff-decedent, Paola Terolli.

130.    As a direct and proximate result of the negligent acts and omissions of Defendant Dr. Dodson, as described herein, Plaintiff-decedent, Paola Terolli was deprived of necessary, timely and appropriate evaluation, diagnosis, treatment and management of her condition.

131.    The negligence of Defendant Dr. Dodson increased the risk of harm to Plaintiff-decedent, Paola Terolli, and directly and proximately caused her catastrophic injuries and death, as more particularly described herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Brian D. Dodson, M.D. individually, and jointly and severally with other Defendants, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interest and costs.

## COUNT IV – NEGLIGENCE
### Plaintiff, Kimet Terolli Individually and as Administrator of the Estate of Paola Terolli, deceased v. Janet Cady, CRNP ("NP Cady")

132.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

133.    The negligent acts and omissions of Defendant NP Cady in the medical evaluation, treatment and management of Plaintiff-decedent, Paola Terolli as a certified registered nurse practitioner specializing in gastroenterology, consisted of one or more of the following:

a.    failure to use appropriate and necessary surgical techniques and/or interventions that would diagnose, treat, and manage Paola Terolli's symptoms and condition;

b.    failure to use appropriate and necessary imaging studies and modalities to diagnose, treat, intervene, and manage Paola Terolli's symptoms and condition;

c.    failure to fully appreciate Paola Terolli's personal, family, surgical, and preoperative medical history;

d.    failure to perform a complete presurgical evaluations, testing, imaging, and assessment of Paola Terolli prior to the November 8, 2022 colonoscopy;

e.    failure to formulate an appropriate surgical plan for Paola Terolli's November 8, 2022 colonoscopy;

f.    failure to formulate a proper postoperative management treatment plan following Paola Terolli's November 8, 2022 colonoscopy;

g.    failure to order, recommend and/or refer Paola Terolli for specialty consultations in light of the absence of any clear, definitive and/or unifying diagnosis before, during or after the November 8, 2022 colonoscopy;

h.    failure to order, recommend, and/or perform colectomy;

i.    failure to apply intraoperative stains during the November 8, 2022 colonoscopy;

j.    failure to consider and/or order prompt repeat examination and colonoscopy by an experienced endoscopist;

k.    failure to repeat surveillance colonoscopy and/or endoscopy with targeted biopsy;

l.    failure to order and perform continued endoscopic surveillance at frequent intervals

m.    failure to perform high-definition dye spray chromoendoscopy under optimized viewing conditions;

n.    failure to appreciate, identify, diagnose, and resect pathological tumor site(s) during the November 8, 2022 colonoscopy;

o.    failure to order, recommend, consider, and/or perform repeat surveillance colonoscopy and/or biopsy following the November 8, 2022 procedure;

p.    failure to further investigate the abnormalities observed intraoperatively during the November 8, 2022 colonoscopy;

q.    failure to further investigate the abnormalities observed histologically during the November 8, 2022 colonoscopy;

r.    failure to utilize appropriate surgical tools or devices for purposes of fully examining Paola Terolli's colon during the November 8, 2022 colonoscopy;

s.    failure to treat Paola Terolli's condition with the requisite urgency through specialty consultations, detailed imaging modalities, and further surgical

investigation into the abnormalities seen relative to the November 8, 2022 colonoscopy;

t.    failure to formulate an appropriate intraoperative plan in the event of abnormalities seen on gross observation during the November 8, 2022 colonoscopy;

u.    failure to conform to the requisite standards of gastroenterology care on November 8, 2022;

v.    failure to take reasonably prudent and necessary action in response to the November 8, 2022 colonoscopy and associated symptoms and medical history of Paola Terolli;

w.    failure to timely diagnose and treat Paola Terolli's colon cancer based on the November 8, 2022 colonoscopy and her presurgical medical history;

x.    failure to promptly and completely perform colonoscopy and necessary surgical, radiological, and clinical examination of Paola Terolli to rule out a pathological or malignant cause/etiology of her symptoms and disease process;

y.    failure to make proper recommendations for follow up and treatment from Paola Terolli's prior surgical procedures upon presentation in August/September 2022;

z.    failure to timely and adequately consider the presence of cancer and screen completely for cancer at the time of Paola Terolli's presentation in August/September 2022;

aa.    failure to compare the findings of the November 8, 2022 colonoscopy to previous colonoscopies and gastroenterology treatment of Paola Terolli's condition;

bb.    failure to properly and reasonably supervise other healthcare providers and medical staff under Defendant's control and direction in the care and treatment of Paola Terolli;

cc.    failure to identify that the findings of the November 8, 2022 colonoscopy were suspicious for adenocarcinoma or another malignant process warranting closer examination;

dd.    failure to order, perform or recommend any necessary radiological imaging of Paola Terolli's abdomen and/or gastrointestinal anatomy before or after the November 8, 2022 colonoscopy for necessary surveillance and monitoring of Paola Terolli's condition;

ee.    failure to properly interpret and report progression, growth, differences in morphology, or other abnormal and irregular changes relative to potential malignant tissue in the colon of Paola Terolli before during or after the November 8, 2022 colonoscopy;

ff.    failure to recommend follow-up surgical biopsy after the November 8, 2022 colonoscopy in the face of suspicious findings concerning the gastrointestinal anatomy of Paola Terolli;

gg.    failure to follow-up on the suspicious findings from the histological irregularities documented in the surgical pathology reports of Paola Terolli's colonoscopies;

hh.    failure to diagnose and appreciate the significance of suspicious findings on Paola Terolli's colonoscopy of November 8, 2022; and

ii.    failure to directly communicate with Paola Terolli's primary care physician and/or other health care providers on or after the November 8, 2022 colonoscopy.

134.    The foregoing negligence of Defendant NP Cady increased the risk of harm, including the risk of cancer progression and death, to Plaintiff-decedent, Paola Terolli.

41

135.    As a direct and proximate result of the negligent acts and omissions of Defendant NP Cady, as described herein, Plaintiff-decedent, Paola Terolli was deprived of necessary, timely and appropriate evaluation, diagnosis, treatment and management of her condition.

136.    The negligence of Defendant NP Cady increased the risk of harm to Plaintiff-decedent, Paola Terolli, and directly and proximately caused her catastrophic injuries and death, as more particularly described herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Janet Cady, CRNP individually, and jointly and severally with other Defendants, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interest and costs.

## COUNT V – WRONGFUL DEATH
**Plaintiff, Kimet Terolli Individually and as Administrator of the Estate of Paola Terolli, deceased v. All Defendants**

137.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

138.    Plaintiff, Kimet Terolli, Individually and as Administrator of the Estate of Paola Terolli, deceased, brings this cause of action under and by virtue of the Wrongful Death Act, 42 Pa. C.S.A. § 8301, and the applicable Rules of Civil Procedure and decisional case law.

139.    Under the Wrongful Death Act, Plaintiff-decedent Paola Terolli left surviving as her beneficiaries: Kimet Terolli (surviving father) and Mimoza Cekani (surviving mother).

140.    Kimet Terolli and Mimoza Cekani are entitled to recover statutory damages under the Wrongful Death Act and have been provided notice of the institution of this action

141.    Plaintiff claims the full measure of recoverable statutory damages in his own right as Plaintiff-decedent's surviving father and on behalf of his wife, Mimoza Cekani, who is Paola Terolli's surviving mother.

142.    Plaintiff further claims damages for any and all pecuniary losses suffered by reason of the death of S.A., including but not limited to damages for all medical expenses, funeral and cremation expenses, and the costs of estate administration necessitated by reason of the injuries which caused her death.

143.    Plaintiff also claims statutory damages under the Wrongful Death Act for the loss of earnings, maintenance, support, companionship, comfort, society, guidance, care, solace, and protection, which Kimet Terolli and Mimoza Cekani would have received from their daughter had her death not occurred by reason of the negligence of Defendants and their respective employees and/or agents, as alleged herein.

144.    Plaintiff further claim statutory damages for the monetary support Plaintiff-decedent, Paola Terolli, could have been expected to provide to her beneficiaries during her lifetime had her death not occurred, including the loss of the pecuniary value of the services which Plaintiff-decedent would have been expected to provide to her beneficiaries during his lifetime had his death not occurred.

145.    Finally, Plaintiff claims cognizable statutory damages under the Wrongful Death Act for the profound emotional grief and psychological loss under substantive Pennsylvania law.

**WHEREFORE**, Plaintiff demands judgment against Defendants individually, and jointly and severally, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interest and costs.

## COUNT VI – SURVIVAL ACTION
**Plaintiff, Kimet Terolli, as Administrator of the Estate of Paola Terolli, deceased v. All Defendants**

146.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

147.    Plaintiff, Kimet Terolli, as Administrator of the Estate of Paola Terolli, deceased, brings this cause of action on behalf of his late daughter under and by virtue of the Survival Act, 42 Pa. Cons. Stat. Ann. § 8302, and the applicable Rules of Civil Procedure and decisional case law.

148.    As a result of the negligent acts and omissions of the Defendants, as described more fully herein, Plaintiff-decedent, Paola Terolli suffered severe, catastrophic, permanent, and fatal injuries and death resulting in the Estate's entitlement to damages pursuant to the Survival Act.

149.    Plaintiff claims the full measure of recoverable statutory damages on behalf of the Estate of Paola Terolli under and by virtue of the Survival Act.

150.    For instance, Plaintiff, Kimet Terolli, as Administrator of the Estate of Paola Terolli, deceased, claims damages for all economic losses to Paola Terolli, including, but not limited to, her total loss of earning power or estimated future earning capacity, less his personal maintenance costs from the time of her death through Ms. Terolli's estimated working lifespan.

151.    On behalf of the Estate of Paola Terolli, Plaintiff also claims damages for his daughter's tremendous physical and mental discomfort, conscious pain and suffering, impending doom, anxiety, anguish, fight, and loss of enjoyment of life and life's pleasures from the time of the aforementioned incident until his death, and all other non-economic damages and losses recoverable under the Survival Act and the decisional law interpreting the Act.

**WHEREFORE**, Plaintiff demands judgment against Defendants individually, and jointly and severally, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interest and costs.

Respectfully Submitted,

VSCPLAW    VAN NAARDEN · SPIZER
CHASE · PINTO

Gregory S. Spizer, Esquire (Pa. I.D. #82345)
Daniel P. Rosner, Esquire (Pa. I.D. #327999)
Two Commerce Square
2001 Market Street, 41st Floor
Philadelphia, PA 19103
gspizer@vscplaw.com
drosner@vscplaw.com
*Attorneys for Plaintiff*

Dated: June 30, 2025

EXHIBIT "A"

FACE OF DOCUMENT CONTAINS A MULTICOLORED VOID PANTOGRAPH AND MICROPRINT BORDER. THIS DOCUMENT ALSO HAS
INVISIBLE FLUORESCENT FIBERS, ARTIFICIAL WATERMARK ON BACK, AND A CHEMICAL REACTIVE VOID FEATURE.

C20 (Rev. 1/07)

**Certificate# 256987**

# Surrogate's Court of the State of New York
# Kings County
## Certificate of Appointment of Administrator

File #: **2023-3154/A**

IT IS HEREBY CERTIFIED that Letters in the estate of the Decedent named below have been
granted by this court, as follows:

Name of Decedent:     **Paola Terolli**                    Date of Death: **July 19, 2023**

Domicile:             **Kings County**

Fiduciary Appointed:   **Kimet Terolli**
Mailing Address:      1014 55th Street Apt. 4a
                      Brooklyn NY  11219

Type of Letters Issued:  **LETTERS OF ADMINISTRATION**

Letters Issued On:    **May 19, 2025**

**Limitations:  Bond having been dispensed with pursuant to SCPA § 801**

**The Administrator is restrained from collecting and administering more than $10,000.00 in personal
assets belonging to the decedent without further order from this court.**

**And said Administrator is hereby restrained from compromising any cause of action until further court
order pursuant to EPTL 5-4.6.**

and such Letters are unrevoked and in full force as of this date.

**Dated:  May 28, 2025**                    IN TESTIMONY WHEREOF,  I have hereunto set my
                                            hand and affixed the seal of the Kings County
                                            Surrogate's Court at Brooklyn, New York.

                                            WITNESS, Hon. Rosemarie Montalbano, Judge of the
                                            Kings County Surrogate's Court.

                                            *Lisa Mathis*

                                            _____
                                            Lisa Mathis, Chief Clerk
                                            Kings County Surrogate's Court

*This Certificate is Not Valid Without the Raised Seal of the Kings County Surrogate's Court*